# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## David S. HUDSON
### Fireman Apprentice (E-2), U.S. Coast Guard

## CGCMS 24217

## Docket No. 1159

## 30 June 2003

Special Court-Martial convened by Commander, U.S. Coast Guard Integrated Support Command, New Orleans, Louisiana. Tried at New Orleans, Louisiana, 26 July 2001.

| | |
|---|---|
| Military Judge: | CDR Mark R. Higgins, USCG |
| Trial Counsel: | LT Cassandra A. Walbert, USCG |
| Defense Counsel: | LT Heather D. Partridge, JAGC, USNR |
| Appellate Defense Counsel: | CDR Jeffrey C. Good, USCG,[1] |
| | LT Vasilios Tasikas, USCG,[2] |
| | LCDR Mike T. Cunningham, USCG |
| Appellate Government Counsel: | LCDR Daniel J. Goettle, USCG |

## BEFORE
## PANEL NINE
## BAUM, BRUCE, PALMER, McCLELLAND[*]
### Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, he was convicted of one specification of wrongful possession of Oxycondone Hydrochloride (OxyContin), a schedule II controlled substance, and one specification of wrongful use of OxyContin, in violation of Article 112a of the Uniform Code of Military Justice (UCMJ); one specification of unauthorized absence for two days, in violation of Article 86, UCMJ; one specification of failure to obey a lawful order by wrongfully possessing four bottles of liquor in his barracks room, in violation of Article 92, UCMJ; one specification of wrongful appropriation of military property of a value in excess of

---

[1] CDR Good briefed the first two assignments of error.
[2] LT Tasikas briefed and orally argued the third assignment of error.
[*] Judge McClelland did not participate in the decision.

$100, in violation of Article 121,UCMJ; and one specification of breaking restriction when he commenced his unauthorized absence, in violation of Article 134, UCMJ.

The military judge sentenced Appellant to a bad conduct discharge, confinement for six months, and reduction to pay grade E-1. The Convening Authority approved the adjudged sentence, but suspended, for twelve months, confinement in excess of five months, as required by the pretrial agreement. Before this Court, Appellant has assigned three errors. The first two assignments contend that the military judge erred by not dismissing two specifications as lesser included offenses of two other specifications, the possession of OxyContin as a lesser included offense of the use of OxyContin, and the two day unauthorized absence as a lesser included offense of the breaking restriction. Appellant has correctly noted that multiplicity issues such as these are waived by an unconditional plea of guilty, absent plain error, and to constitute plain error, the specifications must be "facially duplicative," that is, factually the same. *United States v. Lloyd,* 46 M.J. 19, 20 (1997), *United States v. Britton,* 47 M.J. 195, 198 (1997). He contends that the judge's failure to dismiss the OxyContin possession specification and the two day absence specification constituted plain error. We disagree with that contention as to the possession and use of OxyContin, but find merit in the assignment with regard to the unauthorized absence and breaking restriction. It was plain error not to dismiss the two day absence as a lesser included offense of the breaking restriction. We will set aside the absence conviction and reassess the sentence accordingly.

The third assignment was briefed by a substitute appellate defense counsel after the first counsel was allowed to withdraw from further representation of Appellant because of potential conflicts relating to the third assignment of error. That assignment, which substitute counsel orally argued to the Court, asserts that a bad conduct discharge is inappropriately severe punishment for a junior enlisted Appellant who referred himself for treatment after becoming addicted to OxyContin prescribed by a Coast Guard doctor. Indeed, Appellant was initially prescribed OxyContin for a spider bite by a Coast Guard contract physician, but Appellant did not seek help from the prescribing doctor for possible addiction, choosing, instead, to abuse the drug with illegal purchases upon depletion of the prescribed pills. Subsequently, at a time when Appellant was expecting administrative discharge from the Coast Guard for other reasons, he sought treatment for addiction to OxyContin by contacting his Command Alcohol and Drug Representative (CDAR) concerning his drug problem. As a result, Appellant was hospitalized, and later enrolled in a post-hospitalization counseling program after his inpatient stay was completed. Thereafter, Appellant was disenrolled from the post-hospitalization counseling program for attendance failures. In evaluating the appropriateness of Appellant's sentence, we have noted these circumstances, as well as his convictions for offenses other than OxyContin possession and use, such as violation of a lawful order, breaking restriction, and wrongful appropriation of military property. Contrary to the arguments advanced in the third assignment of error, we have concluded that a bad conduct discharge is not unduly severe punishment for this Appellant and his offenses. Accordingly, that assignment of error is rejected.

**Government Induced Withdrawal of Appellate Review**

Another matter that has been raised by this record, but not assigned as error, warrants comment. It involves a violation of Rule for Courts-Martial (RCM) 1110(c) by improperly inducing Appellant to withdraw appellate review. RCM 1110(c) states: "No person may compel, coerce, or induce an accused by force, promises of clemency, or otherwise to waive or withdraw appellate review." The analysis of the rule states that it "is intended to ensure that any waiver or withdrawal of appellate review is voluntary." Manual for Courts-Martial (MCM), United States (2002 Ed.), App. 21 at A21-89. We consider violation of RCM 1110(c) to be a very serious matter because of its tendency to undermine the integrity of the military justice system by preventing this court from performing its proper function.

Post-trial negotiation and agreements between a member convicted at court-martial and the Convening Authority are permitted, *see United States v. Pilkington*, 51 M.J. 415 (CAAF 1999). But like pretrial agreements, *cf. United States v. Libecap*, 57 M.J. 611, 613-14 (C.G. Ct. Crim. App. 2002), there must be some limits on the permissible terms of a post-trial agreement to prevent subversion of the court-martial process, *Pilkington*, 51 M.J. at 416 (". . . we look to whether the accused has been stripped of substantial rights, has been coerced into making a post-trial agreement, or has somehow otherwise been deprived of his due process rights"). RCM 1110(c) prescribes one such limitation. It is not a limitation to be taken lightly by anyone with any responsibility for Coast Guard court-martial or appellate proceedings, who may be subject to Article 98, UCMJ.

A request by Appellant to withdraw his case from appellate review was submitted to the Court pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982) in conjunction with the assigned errors asserting multiplicity. In support of the *Grostefon* submission, a copy of a letter signed three weeks earlier by Appellant and his trial defense counsel, addressed to the officer exercising general court-martial authority and purporting to withdraw the case from appellate review, was filed with the Court. A week after filing with the Court, appellate counsel requested to retract the *Grostefon* issue, asserting that the letter withdrawing appellate review was not executed voluntarily because Appellant was under the impression at the time he signed it that he was required to withdraw review to avoid having the convening authority order his suspended confinement executed.

We deemed Appellant's request to abandon the *Grostefon* issue as a motion to revoke his withdrawal of appellate review, which, we noted, is expressly disallowed by RCM 1110(g)(1), as follows: "Once submitted, a waiver or withdrawal in compliance with this rule may not be revoked." We went on to explain, however, that although the withdrawal of appellate review is not revoked, this Court has held in *United States v. Haynes*, 53 M.J. 738, 739 (C.G. Ct. Crim. App. 2000) and the cases cited therein, that only upon our granting a motion to withdraw a case from review will the withdrawal of that review be effective. In light of Appellant's assertion concerning the involuntariness of his withdrawal of review, we ordered development of more information on this subject before deciding whether or not to grant the motion to withdraw review.

Affidavits submitted in response to our order reveal that the Convening Authority's Executive Officer and Chief Master At Arms, and the Chief, Military Justice and Command Advice Branch, Maintenance and Logistics Command, Atlantic, all of whom are attorneys—two as law specialists and the third as a selectee under the Coast Guard direct commission lawyer program, were the first to discuss the possibility that Appellant and his counsel might be motivated to request withdrawal of appellate review in order to avoid vacation of the suspended confinement portion of his sentence.

Based on the information conveyed to Appellant's trial defense counsel, we determined that, at a minimum, the resultant letter withdrawing appellate review was induced by Government representations in violation of RCM 1110(c). While the withdrawal representations of Government personnel have not been assigned as error affecting findings or sentence, and we have not found that the violation of RCM 1110(c) prejudiced Appellant under the circumstances of this case, the Court deemed that further evaluation of attorney involvement in Appellant's improperly induced attempt to withdraw his case from appellate review was warranted. Accordingly, the affidavits and an e-mail from the Chief Master At Arms bearing on the subject were forwarded to the Chief Counsel of the Coast Guard for evaluation relative to the prohibitions of RCM 1110(c) and such action as the Chief Counsel deemed appropriate under his general authority with respect to Coast Guard Law Specialists, and specifically with respect to his supervision of attorneys practicing in proceedings governed by the Uniform Code of Military Justice and the Manual for Courts-Martial.

We can understand how delays inherent in the various steps associated with separation by punitive discharge could cause personnel with administrative responsibilities over those awaiting such discharge to seek ways to expedite the process, but they are reminded that they must fully comply with rules such as RCM 1110(c). The mandatory appellate leave program, when first instituted, was thought to be a means of alleviating the burden of maintaining personnel awaiting punitive discharge on the active duty rolls. If that system is not working the way it was envisioned, then consideration by the Joint Service Committee on Military Justice would seem to be appropriate to seek new procedures to reduce administrative problems and expedite the discharge process, without jeopardizing rights that an accused presently possesses. In any event, government representations which induce an appellant to withdraw appellate review, as encountered in the instant case, must be avoided at all costs.

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings of guilty of unauthorized absence for two days in violation of Article 86, UCMJ, as set forth in the specification under Charge II, are set aside and dismissed as multiplicious with the offense of breaking restriction. The remaining findings of guilty, as approved below, are affirmed. The sentence has been reassessed in light of the dismissed unauthorized absence specification, and we are convinced that the adjudged sentence would have been the same if that offense had been dismissed earlier by the judge at trial. Moreover, we have concluded that the

sentence approved below is appropriate for this appellant and his offenses, and on the basis of the entire record should be approved. Accordingly, the sentence approved below is affirmed.

BRUCE, Judge and PALMER, Judge concur.



For the Court,

Roy Shannon Jr.
Clerk of the Court