# IN THE UNITED STATES COAST GUARD
## COURT OF CRIMINAL APPEALS

| | |
|---|---|
| UNITED STATES,<br>Appellee<br><br><br>v.<br><br><br>Jeffrey M. MILLER,<br>Seaman (E-3),<br>U.S. Coast Guard,<br>Appellant | 19 October 2005<br><br><br>APPELLANT'S MOTION TO RETURN THE RECORD TO THE JUDGE ADVOCATE GENERAL; OR, ALTERNATIVELY, TO WITHDRAW THE RECORD FROM APPELLATE REVIEW; AND A MOTION TO ATTACH DOCUMENTS FILED WITH THIS COURT ON 3 JUNE 2005<br><br>CGCMS 24292<br><br>DOCKET NO. 005-69-01<br><br><br><u>ORDER AND OPINION</u> |

Special Court-Martial convened by Commander, Coast Guard Activities New York. Tried at New York, New York, on 21 November 2003.

| | |
|---|---|
| Military Judge: | CDR Michael E. Tousley, USCG |
| Trial Counsel: | LCDR Luke M. Reid, USCG |
| Defense Counsel: | LT Brian A. Whitaker, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LCDR John S. Luce, Jr., USCG |

**BEFORE**
*EN BANC*
**BAUM, KANTOR, McCLELLAND, TEAL, & FELICETTI**
Appellate Military Judges

OPINION AND ORDER OF THE COURT
RESPONDING TO APPELLANT'S MOTIONS

BAUM, Chief Judge:

### Background

Appellant was tried by special court-martial military judge alone on 21 November 2003. After conviction of various drug offenses pursuant to pleas of guilty, entered in accordance with a pretrial agreement, Appellant was sentenced by the judge to a bad-conduct discharge and

reduction to E-1, which the Convening Authority approved on 18 June 2004. Approximately four months prior to the Convening Authority's action, Appellant and his defense counsel signed a waiver of appellate review, which counsel filed with the Convening Authority on 5 March 2004. Such a filing before the Convening Authority acted had no effect according to *United States v. Hernandez*, 33 M.J. 145 (C.M.A. 1991); *accord United States v. Smith,* 34 M.J. 247 (C.M.A 1992); *United States v. Walker*, 34 M.J. 317 (C.M.A. 1992); *United States v. Smith*, 44 M.J. 387 (C.A.A.F. 1996). However, after the Convening Authority approved the sentence on 18 June 2004, trial defense counsel filed the waiver of appellate review again on 9 July 2004, resubmitting the waiver previously signed by Appellant with a statement that Appellant had been advised of his appellate rights and the effect of a waiver, but persisted in his desire to not have his case reviewed on appeal. Under the terms of Article 61, Uniform Code of Military Justice (UCMJ), as interpreted by *United States v. Hernandez*, 33 M.J. 145 (C.M.A. 1991), a waiver is supposed to be filed within 10 days after action by the convening authority is served on the accused or defense counsel. Article 61, UCMJ, states that such a waiver must be signed by both the accused and defense counsel, but does not state explicitly when signing is permitted or when signing is unacceptable. Rule for Courts-Martial (R.C.M.) 1110(f), Manual for Courts-Martial (MCM), United States, (2002 ed.), the rule implementing Article 61, UCMJ, initially did not say anything about the time of signing. However, in 1991, the President amended that rule so that it now states: "The **a**ccused may sign a waiver of appellate review at any time after the sentence is announced." R.C.M. 1110(f)(1).

The Convening Authority treated counsel's submission as an effective waiver of appellate review, causing the record to be reviewed by a judge advocate under the terms of R.C.M. 1112(a) and (d), pursuant to R.C.M. 1110. Thereafter, the record was forwarded to the Judge Advocate General's Military Justice Office in accordance with COMDTINST M5810.1D, Military Justice Manual, dated 17 August 2000. Because of the purported waiver, the record was deemed to be barred from review by this Court under Article 66, UCMJ, and, instead, was sent to the Chief Judge, in accordance with standing practice for cases not reviewable by the Court, for a gratuitous review by the Chief Judge under Article 69(b) to assist the Judge Advocate General in determining whether action under that Article might be warranted. Without performing that review, the record was returned to the Chief of the Office of Military Justice for reevaluation of

2

the viability of Appellant's purported waiver, since it was not signed by Appellant within the time that Article 61, UCMJ, and *Hernandez*, 33 M.J. at 148, require for filing of waivers.

Upon reevaluation, the Judge Advocate General presumed the waiver of Article 66, UCMJ, review to be valid. However, he decided to exercise his authority under Article 69(d) by referring the record to this Court in order to resolve the open question whether R.C.M. 1110(f) is a correct interpretation of Article 61, UCMJ. Put another way, we must decide now whether, notwithstanding the amended R.C.M. 1110(f), the law requires an accused to sign a waiver of appellate review during the time mandated for filing of that waiver in order for it to be valid. Appellant has moved that we return the record to the Judge Advocate General for further disposition, arguing that he has substantially complied with all pertinent procedural means to waive Article 66, UCMJ, review of his court-martial. That motion is denied, because, even assuming the waiver to be effective, only review under Articles 66 and 69(a), UCMJ, are barred by a valid waiver of appellate review, according to the terms of Article 61(c), UCMJ. Accordingly, we will perform the review assigned to this Court under Article 69(d), UCMJ, by the Judge Advocate General.

### Time Requirement for Signing Waiver of Appellate Review

In the record before us, although a waiver of appellate review pursuant to Article 61, UCMJ, was submitted to the Convening Authority twice, once before the time mandated for filing by Article 61, UCMJ, and *Hernandez*, 33 M.J. at 148, and again at the proper time within 10 days after service of the Convening Authority's action, Appellant signed the waiver only once, when the waiver was filed improperly before action by the Convening Authority. Granted, the second filing was at the proper time, but Appellant did not sign it again at that time. The question to be answered is whether the signing by Appellant before the Convening Authority's action was valid in light of the 1991 amendment to R.C.M. 1110(f). We think this question is answered by a rereading of *United States v. Hernandez*, 33 M.J. 145 (C.M.A. 1991); *United States v. Smith*, 34 M.J. 247 (C.M.A. 1992); *United States v. Walker*, 34 M.J. 317 (C.M.A. 1992); and *United States v. Smith*, 44 M.J. 387 (C.A.A.F. 1996).

We discern language in those cases that strongly suggests that signing is limited to the time for filing.  First, in *Hernandez,* the Court of Military Appeals granted review of the following issue:

> WHETHER A WAIVER OF APPELLATE REVIEW
> ***EXECUTED*** BEFORE THE CONVENING AUTHORITY
> TAKES ACTION ON A CASE DEPRIVES THIS
> HONORABLE COURT OF JURISDICTION.

*Hernandez*, 33 M.J. at 147 (emphasis added).  The Court responded that, "Clearly, the answer must be in the negative." *Id*. at 147.

While the Court went on to discuss the time-of-filing requirement and seemed to hold the waiver ineffective because of its filing at the wrong time, saying nothing more about the time of signing or executing, the fact remains that the granted issue relates to the time of execution, which is a term that includes the act of signing[1].  Subsequent to *Hernandez*, the President amended R.C.M. 1110(f) to allow for signing of waivers any time after sentence is announced.  The Court of Military Appeals' view on this subject was reiterated the next year, however, in *United States v. Smith,* when it stated that the Court in *Hernandez* "held that the statute [Article 61, UCMJ] required that a waiver of appellate review shall be ***signed*** by the accused and defense counsel within 10 days after the action of the convening authority had been served upon the accused or his defense counsel." *United States v. Smith*, 34 M.J. 247, 249 (C.M.A. 1992) (emphasis added).  Also, that same year, the Court of Military Appeals, in *United States v. Walker*, stated, "[In *United States v. Hernandez*], this Court held that a waiver of appeal ***executed*** prior to a convening authority's action was ineffective." *United States v. Walker*, 34 M.J. 317, 318 (C.M.A. 1992) (emphasis added).  Subsequently, the Court of Appeals for the Armed Forces held, in the later *Smith* case, that the amended R.C.M. 1110(f) did not affect the ruling in *Hernandez*.  *United States v. Smith*, 44 M.J. 387, 392 (C.A.A.F. 1996).

---

[1] The 3rd definition of "execute" in Black's Law Dictionary is: To make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form.  BLACK'S LAW DICTIONARY 609 (8th ed. 2004).  The 4th definition of "execute" in The American Heritage Dictionary is: To make valid, as by signing.  THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 621 (4th ed. 2000).

Strictly speaking, the holdings of these cases may be seen as relating solely to the time of filing rather than signing, since the waivers at issue were filed too early at a time clearly not allowed by the statute. However, the waivers were signed at an earlier time as well, and given the rationale in *Hernandez* for its interpretation of Article 61, UCMJ, it seems clear that the Court saw that Article as covering both signing and filing. The Court's language in all four cases includes signing along with filing, and the language in the later *Smith* case is especially clear, stopping just short of explicitly invalidating the amendment to R.C.M 1110(f) in the following comments on the lower court's dissent: "The dissenting judge below, recognizing our 1991 decision in <u>Hernandez</u>, suggests that Change 5 to RCM 1110(f) … somehow superseded it." *Smith*, 44 M.J. at 391; "It is beyond cavil that the President cannot abrogate a statute passed by Congress in matters related to military justice." 44 M.J. at 392.

From our perspective, it seems unquestionably to be the view of our higher Court that Article 61, UCMJ requires, for a waiver of appellate review to be valid, both signing and filing thereof within the 10 day period after service of the convening authority's action on an accused or his defense counsel. We would need unusual facts to diverge from our higher Court's stated view in that regard, even if that view were not deemed to be the strict holding in those cases. Indeed, the facts in this case are different from those in the four precedents: the prematurely signed waiver was resubmitted to the Convening Authority within the proper time frame, with the following statement by trial defense counsel: "As provided by [R.C.M. 1110 and 1203], I have advised SR Miller of his appellate rights, and he has reiterated his desire to waive his appellate rights."

Do these different facts warrant a different result? We think not. Certainly, when signed before action by the convening authority, the accused does not have the understanding required by Article 61, UCMJ, as interpreted by *United States v. Hernandez*. Appellant needed to know what action the convening authority had taken in order for the waiver to be fully informed. The defense counsel's statement gives us no confidence that he had given Appellant new advice in light of the new stage of the case, or that Appellant had made a new fully informed decision. It makes no sense then for the waiver signed earlier to be considered valid simply because it is submitted after the convening authority acts.

The provision in R.C.M. 1110(f) allowing signing of a waiver at any time arguably has been declared invalid by our higher Court. At best, it invites practices that flout the spirit of Article 61, UCMJ as interpreted by our higher Court. It should be removed from the MCM.

### Waiver Decision and Conversion to Article 66, UCMJ, Review

In light of the foregoing, we hold that the waiver of appellate review filed with the Convening Authority was not a valid waiver. Accordingly, the record should have been referred to this Court for review pursuant to Article 66, UCMJ. At this point, having completed our Article 69(d) review, we could return the record to the Judge Advocate General for referral back to this Court for a review under Article 66, UCMJ. In the interest of judicial economy, however, we will treat the referral now as one for Article 66, UCMJ, review. In this regard, Appellant has moved for withdrawal of appellate review pursuant to Article 61, UCMJ. He has also moved for attachment of a request for withdrawal of review signed by him and an affidavit. The motion to attach these documents will be granted.

### Motion to Withdraw Article 66, UCMJ, Review

In acting on the motion to withdraw, we note the distinct difference between the statutory treatment of withdrawal as opposed to waiver of appellate review. Submission of a waiver is limited to a particular period of time, as we have already discussed, but Article 61, UCMJ allows a withdrawal to be made at any time. As pointed out in *United States v. Rimando*, 51 M.J. 553 (C.G.Ct.Crim.App. 1999), the Court of Appeals for the Armed Forces, in accounting for the difference between the two, reasoned that "withdrawal of an appeal occurs under judicial supervision, which provides some safeguards against improvident action by an accused." *United States v. Hernandez,* 33 M.J. 145, 149 (C.M.A.1991). Those safeguards are normally not present in cases of waiver of appellate review because judicial oversight in those cases is rare, making compliance with the statutory requirements for waiver all the more important to possibly prevent uniformed, involuntary submissions.

In the past, we have taken to heart our judicial review responsibilities with respect to motions to withdraw appellate review, which has resulted in a determination in one case that a withdrawal request had been improperly induced in violation of R.C.M. 1110(c), *United States v.*

*Hudson*, 58 M.J. 830 (C.G.Ct.Crim.App. 2003), *rev'd on other grounds*, 59 M.J. 357 (C.A.A.F. 2005), and various denials of withdrawal in other cases. *United States v. Haynes,* 53 M.J. 738 (C.G.Ct.Crim.App. 2000); *United States v. Rimando*, 51 M.J. 553 (C.G.Ct.Crim.App. 1999); *United States v. Ross,* 32 M.J. 715 (C.G.C.M.R. 1991); *United States v. Johnson,* 29 M.J. 1065 (C.G.C.M.R. 1990). After judicial review of Appellant's motion for withdrawal in the instant case, we find none of the reasons to deny the motion that were found in previous cases. Moreover, after considering Appellant's affidavit filed with the Court, we conclude that the withdrawal request was informed and voluntary. Accordingly, it will be granted.

In light of the foregoing, it is by the Court this 19th day of October 2005,

ORDERED:

That Appellant's motions to file documents and to withdraw the record from appellate review are hereby granted. The record is returned to the Judge Advocate General for whatever action remains to finalize this case.

McCLELLAND, Judge and TEAL, Judge concur.

FELICETTI, Judge (concurring in part and dissenting in part), in which KANTOR, Judge joins:

We concur with permitting SN Miller to withdraw his case from appellate review. He has been fully informed by competent defense counsel on numerous occasions about the consequences of either waiving or withdrawing from appellate review. It has always been his desire to avoid appellate review and we should respect his request.

We also concur with the majority's unstated holding that this Court is prohibited from granting a requested withdrawal from appellate review when a case is referred by the Judge Advocate General (JAG) under Article 69(d), Uniform Code of Military Justice (UCMJ). There, obviously, would be no need to convert this case to Article 66, UCMJ review before granting the requested withdrawal if this Court had authority to do so when conducting review under Article 69(d), UCMJ.[1]

We respectfully dissent from the holding that Article 61(a), UCMJ requires the accused and defense counsel to always sign a waiver of appellate review within 10 days of receipt of the convening authority's action. The majority's selective, yet reasonable, use of dicta does not necessarily lead to this result. To do so, one must also discount the holdings in the cited cases, the prior cases of this Court, and the legislative history relied upon by our higher Court in its lead opinion. Assigning these other sources of statutory interpretation a bit more weight leads to a different conclusion. Simply put, the accused must make a provident decision to formally complete (execute) his previously signed waiver form by filing it with the convening authority. A provident decision can only be made after service of the action. Given this second reasonable interpretation that does not invalidate R.C.M. 1110(f), we would, under the facts of this case, find the 9 July 2004 waiver valid.

---

[1] Article 69(d), UCMJ did not exist when Article 61(a) was added to the UCMJ. Therefore, at the time of its passage, the right to withdraw from appellate review applied to all the paths a case might take to a Service Court of Appeals. The National Defense Authorization Act For Fiscal Years 1990 and 1991 established a procedure for the Judge Advocates General to certify cases to the (then) Courts of Military Review when the sentence was not subject to automatic review. National Defense Authorization Act for Fiscal Years 1990 and 1991, H.R. Conf. Rep. No. 101-331 at 658 (1989), *reprinted in* 1989 U.S.C.A.A.N 1115. Congress did not amend Article 61, UCMJ to reflect the JAG's new authority contained in Article 69(d), UCMJ. Therefore, the provisions regarding withdrawal of appellate review do not apply to cases sent to a Court of Criminal Appeals under Article 69(d), UCMJ.

**Additional Background**

SN Miller met with his defense counsel after sentencing on 21 November 2003 to discuss his appeal rights. SN Miller said he wanted to waive his rights, so defense counsel provided him with a standard waiver/withdrawal of appellant rights form, DD FORM 2330, AUG 84. SN Milller read the form and understood it.

A little more that three months later, SN Miller signed the DD FORM 2330, AUG 84 and mailed it to his defense counsel. It is unclear from the record when the typed entries were made on the form. However, the typed words "CA Action not yet completed" appear in the first blank space. The defense counsel filed the form with the Convening Authority on 5 March 2004, well before the Convening Authority approved the court-martial findings.

Defense counsel was served a copy of the Convening Authority's action on 8 July 2004. Receipt of the action may have reminded the defense counsel that Article 61, UCMJ requires that any waiver of appeal rights "must be filed within 10 days after the action under section 860(c) of this title (article 60(c)) is served on the accused or on defense counsel." Article 61(a), UCMJ. The defense counsel, therefore, called SN Miller on 9 July and either read to him, or provided a copy of, the Convening Authority's action and discussed a waiver of appellate review.

With SN Miller's approval, the defense counsel took the following actions: He modified, or caused to be modified, the DD FORM 2330, AUG 84 previously signed by SN Miller to indicate that he had now read the Convening Authority's action. The defense counsel signed a letter stating that he had advised SN Miller of his appellate rights, and that SN Miller desired to waive these rights. Finally, the defense counsel sent the modified DD FORM 2330, AUG 84 to the Convening Authority using the previously discussed letter as the cover letter.

At some later date in 2005, appellate defense counsel advised SN Miller that his earlier waiver may not have been valid. SN Miller reiterated that he had been fully informed on numerous occasions of all the consequences of waiving his appeal rights and still wished to waive his appeal.

**United States v. Jeffrey M. MILLER, No. 005-69-01 (C.G.Ct.Crim.App. 2005)**

**Discussion**

**10 U.S.C. 861(a) Requires that a Waiver of Appellate Review
be Filed Within 10 days After the Convening Authority Action
is Served Upon the Accused or Defense Counsel, However, the
Statute Does Not Also Require the Accused and Defense
Counsel to Sign the Waiver Within this Same Timeframe.**

**Time Requirement for *Filing* a Waiver of Appellate Review**

SN Miller's first purported waiver of appellate rights, filed on 5 March 2004, clearly had
no legal effect since it violated the plain language of the UCMJ. The UCMJ requires that any
waiver of appeal rights "must be filed within 10 days after the action under section 860(c) of this
title (article 60(c)) is served on the accused or on defense counsel." Article 61(a), UCMJ. The
Convening Authority acted on SN Miller's case on 18 June 2004. Yet, the purported waiver of
appellate rights was filed over two months earlier.

Our higher Court has directly addressed the issue of prematurely filed appeal waivers,
holding consistently, if unremarkably, that the statute means exactly what it says. *United States
v. Hernandez*, 33 M.J. 145 (C.M.A. 1991); *United States v. Smith*, 44 M.J. 387 (C.A.A.F. 1996).
"The statutory language seems perfectly clear and, given its most obvious reading, would seem
to mean that a waiver must be filed only within a 10-day period after the convening authority has
acted and his action has been served upon the accused or on defense counsel." *Hernandez*, 33
M.J. at 148.

This Court has also previously addressed the issue of prematurely filed waivers. Relying
on *Hernandez*, we stated: "To bar appellate review of a case, however, waiver must be filed
within ten days after service of the convening authority's action on the accused or his defense
counsel, not before that action is taken." *United States v. Haynes,* 53 M.J. 738, 739
(C.G.Ct.Crim.App. 2000); *see also United States v. Greening*, 54 M.J. 831, 833
(C.G.Ct.Crim.App. 2001).[2]

---

[2] Prior to SN Miller's case, this Court has consistently characterized the *Hernandez* discussion about executing a
waiver as going to the filing of the wavier form with the Convening Authority. *See United States v. Haynes*, 53 M.J.
738, 739 (C.G.Ct.Crim.App. 2000); *United States v. Greening*, 54 M.J. 831, 833 (C.G.Ct.Crim.App. 2001).

Of course, a waiver must also be signed by the accused and defense counsel before filing. Article 61(a), UCMJ. Until now, signing the waiver does not appear to have been an independent problem area since all the reported cases address instances where the signed waiver was filed before the convening authority's action.[3] *See United States v. Hernandez*, 33 M.J. 145 (C.M.A. 1991); *United States v. Smith*, 44 M.J. 387 (C.A.A.F. 1996); *United States v. Haynes,* 53 M.J. 738 (C.G.Ct.Crim.App. 2000); *United States v. Greening*, 54 M.J. 831 (C.G.Ct.Crim.App. 2001).

While clearly focused on the timing of a waiver's filing, our higher Court has referred to a signed and filed waiver as having been "executed." *Hernandez*, 33 M.J. at 147. This usage is consistent with the *first* definitions of the word execute as a verb meaning "[t]o perform or complete (a contract or duty)," BLACK'S LAW DICTIONARY 609 (8th ed. 2004), or "[t]o put into effect; carry out." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 621 (4th ed. 2000). Thus, any signed waivers that are filed (i.e. "executed") before the convening authority's action, such as those in *Hernandez*, *Smith*, *Haynes*, *Greening*, or SN Miller's 5 March 2004 submission, are clearly invalid. Such waivers have no legal effect because they do not comply with the UCMJ. *Hernandez*, 33 M.J. at 145.

SN Miller's second waiver of appellate rights, filed on 9 July 2004, complied with the explicit statutory requirement to file the waiver within 10 days of receipt of the Convening Authority's action.

### Time Requirement for *Signing* a Waiver of Appellate Review

No court has reported a holding that the Article 61(a), UCMJ time limit on filing (i.e. executing) a waiver of appellate review also applies to when the accused and defense counsel must sign the waiver. Prior to 1983, the UCMJ made no provision for an accused to waive or

---

[3] The dicta cited by the majority from *United States v. Smith*, 34 M.J. 247, 249 (C.M.A. 1992) may, at first glance, suggest otherwise. However, the issue granted in *Smith* was "SHOULD THIS HONORABLE COURT EXERCISE ITS SUPERVISORY AUTHORITY TO REQUIRE THAT THE JUDGE ADVOCATES GENERAL APPOINT APPELLATE DEFENSE COUNSEL IN EVERY CASE BEFORE A COURT OF MILITARY REVIEW?" More importantly, the *Smith* case incorrectly characterizes the discussion in *Hernandez* which stated: "The statutory language seems perfectly clear and, given its most obvious reading, would seem to mean that a waiver must be *filed*

withdraw appellate review. The Military Justice Act of 1983 replaced the UCMJ's existing Article 61, in part, with the following:

> 10 USC 861(a). In each case subject to appellate review under section 866 or 869(a) of this title (article 66 or 69(a)), except a case in which the sentence as approved under section 860(c) of this title (article 60(c)) includes death, the accused may file with the convening authority a statement expressly waiving the right of the accused to such review. *Such a waiver shall be signed by both the accused and by defense counsel and must be filed within 10 days after the action under section 860(c) of this title (article 60(c)) is served on the accused or on defense counsel.*

The Military Justice Act of 1983, Pub. L. No. 98-209, 97 Stat 1393 (1983) (emphasis added).

Focusing on the statute's text, the key sentence contains two distinct actions ("signed" and "filed") connected by the word "and." The words "[S]uch a waiver" are the subject of the sentence. The sentence contains two distinct, but related, verbs – "shall be signed" and "must be filed." The use of two slightly different helping verbs, or auxiliary modals, reinforces the separate nature of the two actions.[4]

The phrase "within 10 days" is a prepositional phrase acting as an adverb to modify the verb "must be filed." *See* Diane Hacker, THE BEDFORD HANDBOOK 796 (6th ed. 2002). This much is certain so the waiver must be filed within 10 days of the action. It is unclear, however, given the placement of the prepositional phrase, that it also modifies the verb "shall be signed." Given this ambiguity, we look to the chronology of the statute's construction for any indication that Congress also intended to apply the timing requirement to the signature of the accused and defense counsel.

The statute's chronology shows that the concepts of signing and filing the waiver were originally treated separately, with the 10-day requirement applying only to the filing. The Military Justice Act of 1983 originated in the Senate as Senate Bill 974. The key concepts of

---

only within a 10-day period after the convening authority has acted and his action has been served upon the accused or on defense counsel." *Hernandez*, 33 M.J. at 148 (emphasis added).

[4] "Shall be" and "must be" are helping verbs, or auxiliary modals, that modify, respectively, "signed" and "filed." *See* THE CHICAGO MANUAL OF STYLE 181-182 (15th ed. 2003); Diana Hacker, THE BEDFORD HANDBOOK, 346-347 (6th ed. 2002).

signing and filing the waiver appeared in separate sentences, both as reported out of the Senate Armed Services Committee and as approved by the full Senate. S. 974, 98th Cong. § 5 (1983). When it arrived in the House of Representatives, S. 974 stated:

> [t]he accused may file with the convening authority a statement expressly waiving the right of appellate review. An express waiver of the right to appellate review shall be signed by the accused and defense counsel. The statement shall be filed within ten days after the action under section 860(c) of this title (article 60(c)) is served on the accused or his counsel.

S. Rep. No. 98-53, at 49-50 (1983); H.R. Armed Serv. Comm. Rep. No. 98-9, at 13-14 (1983).

The Subcommittee on Military Personnel and Compensation of the House Armed Services Committee held extensive hearings on S. 974 with no reported testimony on the two key sentences in the Senate bill. The witnesses, and administration, strongly supported the idea of the accused being able to waive appellate review. *See* H.R. Armed Serv. Comm. Rep. No. 98-9, at 38-49. The Subcommittee favorably reported out the bill on 9 November 1983, reportedly making only "technical" or non-substantive changes. H.R. Armed Serv. Comm. Rep. No. 98-9, at 49; H.R. Armed Serv. Comm. Rep. No. 98-10, at 1-2 (1983).

On 15 November 1983, the full Armed Services Committee favorably reported out the amended bill "which contains a series of technical amendments to the Senate bill that has passed in the other body." "The substance of the Senate bill in our substitute is basically the same." The Military Justice Act of 1983: *Hearings on S. 974* Before the House Armed Services Committee, 98th Cong. 1st Sess. (1983) (statement of Hon. G.V. "Sonny" Montgomery), *reprinted in* H.R. Armed Serv. Comm. Rep. No. 98-10, at 1-2. The bill moved to the House floor that afternoon and passed the next day. The Senate approved the technically-amended S. 974 on 18 November.

One of the "technical" changes, however, combined the two sentences in S. 974 about signing and filing the waiver into one compound sentence. *Compare* H.R. Armed

Serv. Comm. Rep. No. 98-9, at 13-14, *with* H.R. Armed Serv. Comm. Rep. No. 98-10, at 52, *and* H.R. Rep. No. 98-549, at 5 (1983).  While this action might be some indication of an intentional change of meaning, several actions refute such an inference.  First, on multiple occasions the House labeled its changes as purely "technical" or non-substantive.  H.R. Armed Serv. Comm. Rep. No. 98-9, at 49; H.R. Armed Serv. Comm. Rep. No. 98-10, at 1-2; H.R. 98-549, at 12-13.  Also, the hearing record indicates broad support for the bill as approved by the Senate.  *See* H.R. Armed Serv. Comm. Rep. No. 98-9, at 38-49.  There was no concern expressed about when the waiver form must be signed.  The primary issue was to ensure that the accused made a voluntary and informed decision.  *See* S. Rep. No. 98-53, at 23 (1983).

The full House, moreover, adopted the Senate's section-by-section analysis of the bill.  H.R. Rep. No. 98-549, at 21 (1983), *reprinted in* 1983 U.S.C.C.A.N. 2187.  The sectional analysis of a committee report explains precisely what each section is intended to accomplish.  *See* Charles W. Johnson, (Parliamentarian, H.R.), *How Our Laws Are Made*, § VII, ¶ 1 (June 20, 2003), *available at* http://thomas.loc.gov/home/lawsmade.bysec/reported.bills.html (last visited Oct 18, 2005).  It would, therefore, be highly counterproductive for the House to adopt the Senate's section-by-section analysis of the bill if a substantive change was intended.  Especially since the Senate's sectional analysis, consistent with its version of the bill, limits the timing requirement to the waiver's filing.  S. Rep. No. 98-53, at 22 (1983).  Finally, the overall speed with which the full House Armed Services Committee, the House of Representatives, and Senate agreed to the "technical" amendments, along with the lack of Conference Committee, suggests that the House's "technical" changes were not considered substantive.

On balance, the bill's chronological history indicates that the absolute requirement to act within 10 days after service of the convening authority's action only applies to the waiver's filing.  The current sentence in Article 61(a), UCMJ began as two separate sentences that were pasted together.  There was no intent to change the original meaning that imposed a time requirement only on the waiver's filing to ensure the accused made an informed and voluntary decision to waive review.  *See* S. Rep. No. 98-53, at 23

(1983); H.R. Armed Serv. Comm. Rep. No. 98-9, at 49; H.R. Armed Serv. Comm. Rep. No. 98-10, at 1-2; H.R. Rep. No. 98-549, at 12, 21 (1983).

The House and Senate report language confirms that the primary concern with the new right to waive appellate review was to ensure that the accused made a provident decision to do so — not about when he signed a form.[5] The primary goal was to streamline the post-trial review process while preserving the fundamental rights of military members. H.R. Rep. No. 98-549, at 13, *reprinted in* 1983 U.S.C.C.A.N. 2178. In creating a limited right to waive appeal, Congress ensured that any waiver would be "knowing, voluntary, and in writing." S. Rep. No. 98-53, at 7-8, 23. This meant that the accused could not make the decision to waive appeal "until after the convening authority takes his action." *Id.* at 22. Congress also tasked the Department of Defense to develop a "simple and concise" waiver form which "protects the right of the accused to make a voluntary and informed choice, and also protects the counsel against unfounded challenges of inadequate representation." S. Rep. No. 98-53, at 23.

With this focus on a provident waiver of appellate review, the report language concentrates the timing requirement on the waiver's filing. "The revised provision permits an accused to *file* a statement expressly waiving the right to appellate review within 10 days after notice of the convening authority's action in cases that are subject to review by a Court of Military Review under Article 66 or by the Judge Advocate General under Article 69(a)." S. Rep. No. 98-53, at 22 (emphasis added). Of course, the waiver form must also be signed but the core requirement is for a provident decision by the accused to waive appellate review.

### Requirement for a Provident Filing of a Waiver of Appellate Review

Our higher Court has confirmed that the core requirement of Article 61(a), UCMJ is a provident decision by the accused. In addition to filing the waiver of appellate review within the

---

[5] While there is an active debate about how much, if any, weight should be accorded to report language, our higher Court used it in its lead opinion on Article 61(a), UCMJ. *United States v. Hernandez*, 33 M.J. 145, 148 (C.M.A. 1991). *See* Norman J. Singer, SUTHERLAND STATUTORY CONSTRUCTION, §5.A:5 (6th ed. 2000 Revision). It is, therefore, appropriate to rely on this very language, especially when interpreting dicta from, and based upon, the *Hernandez* decision.

specified timeframe, the decision to file the waiver must be provident.  *United States v. Hernandez*, 33 M.J. 145, 148-149 (C.M.A. 1991).  Our higher Court has articulated several policy reasons in support of the legislative choice requiring that waivers be filed only after the convening authority's action:

> [t]he guilty findings and the sentence may be a very traumatic event for an accused; and, as a result, a "cooling off" period is appropriate so that he may decide rationally and without undue emotion or resentment what to do. The delay until after the convening authority has acted provides this opportunity to reflect calmly on the potential adverse effects of the conviction and sentence and to decide whether to proceed with an appeal.
>
> Secondly, until the convening authority has acted, an accused is not in the best position to make an informed choice as to whether to pursue an appeal. Indeed, the action of the convening authority may surprise the accused and present grounds for appeal that he never anticipated.
>
> Finally, … If an appeal can be waived too easily and without full consideration by the accused of the consequences, the danger is posed that the waiver may be improvident- … .

*Hernandez*, 33 M.J. at 148-149.


While technically dicta, the preferred way to demonstrate a provident filing decision is for the accused to sign the waiver form within 10 days of receipt of the convening authority's action. *See United States v. Hernandez*, 33 M.J. 145 (C.M.A. 1991); *United States v. Smith*, 34 M.J. 247 (C.M.A. 1992); *United States v. Smith*, 44 M.J. 387 (C.A.A.F. 1996).  A waiver signed and filed (i.e. executed) before the action is normally improvident because it appears that the accused never knew the results of the convening authority's action.  *Hernandez*, 33 M.J. at 148.  The record does not show that the accused made an informed and voluntary decision after a "cooling off" period.  *Id*. at 148.

The record, however, may sometimes show that the accused's decision to file (execute) a previously signed waiver form was, in fact, provident.  Based on the *Hernandez* discussion, the providency of such a waiver decision may be demonstrated by a serious, rational, and informed

discussion between the accused and his or her defense counsel after the action, but before filing the waiver. *Id*. at 148. This informed discussion, of course, must be documented in the record. *See* Article 66 & 67, UCMJ.

In this case, the record shows that the accused consulted with his defense counsel and engaged in just such a serious, rational, and fully informed discussion before directing his attorney to execute the waiver. The defense counsel made an official written statement to the Convening Authority representing that: (1) he had either read to the accused, or provided him a copy of, the Convening Authority's action dated 18 June 2004; (2) he had spoken with the accused after the action; (3) he had advised the accused of his appellate rights; (4) the accused expressed a desire to waive appellate review; and (5) the attached DD FORM 2330, AUG 84 accurately reflected the desires of the accused to waive appellate review.

While done in a far less than ideal manner, perhaps even sloppily, we find that the defense counsel's 9 July 2004 submission meets the bare minimum standard to show that SN Miller's decision to file (execute) the waiver form was provident. It was, therefore, a valid waiver under Article 61(a), UCMJ and the precedents of this, and our higher, Court.



For the Court,


Roy Shannon Jr.
Clerk of the Court